# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

ROBERT HOROWITZ,

    Plaintiff,

v.

CROSSROADS ADVISORS, LLC,
CROSSROADS INVESTMENTS, LP,
CROSSROADS PARTNERS, LP,
CROSSROADS INVESTMENTS, LLC,
CROSSROADS ASSETS, LLC and
ALEXANDER GREENBERG,

    Defendants.

Civil Action No. TDC-22-0139

## MEMORANDUM OPINION

Plaintiff Robert Horowitz, who is self-represented, has filed a civil action against Defendants Crossroads Advisors, LLC; Crossroads Investments, LP; Crossroads Partners, LP; Crossroads Investments, LLC; and Crossroads Assets, LLC (collectively "the Crossroads Entities"), as well as Defendant Alexander Greenberg. In the operative Amended Complaint, Horowitz alleges claims for breach of contract, unjust enrichment, accounting, and breach of fiduciary duty. Pending before the Court is Defendants' Motion to Dismiss. Having reviewed the pleadings and briefs, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The following facts are set forth in the Amended Complaint and are taken as true for purposes of the Motion.

Defendant Alexander Greenberg is engaged in hedge fund investing and advising through the Crossroads Entities. Greenberg is the sole member of Crossroads Advisors, LLC, a Delaware limited liability company ("LLC"). Crossroads Advisors, LLC, in turn, is the general partner of Crossroads Partners, LP, a Delaware limited partnership ("LP") engaged in hedge fund investment (referred to in the Amended Complaint as "the Fund"), in which Greenberg is limited partner.

Crossroads Investments, LP, a Delaware LP, is a hedge fund advisory firm which, along with Crossroads Advisors, LLC, directs the investments and business affairs of Crossroads Partners, LP. Crossroads Investments, LP has two partners: Crossroads Investments, LLC, which is the sole general partner, and Crossroads Assets, LLC, which is the sole limited partner. In turn, Greenberg is the sole member of both Crossroads Investments, LLC and Crossroads Assets, LLC, both of which are Delaware LLCs.

For over 25 years, Horowitz has provided research for investment professionals through "The Insiders Edge" research service and newsletter. Am. Compl. ¶ 3, ECF No. 37. Greenberg was a subscriber to The Insiders Edge. On November 19, 2017, while subscribed to The Insiders Edge, Greenberg emailed Horowitz and told him that he was "working on something" that he wanted to discuss with Horowitz. *Id.* ¶ 14. The next day, in an email to Horowitz, Greenberg stated that Horowitz's "idea generation has been a highly significant positive factor in the portfolio" and that Greenberg wanted to discuss "expand[ing]/integrat[ing] our business relationship" and asked, "More active consulting? Partnership? Leave things as they are?" *Id.* ¶ 15. Greenberg attached to this email what he described to Horowitz as "a high level internal document I prepared to summarize our investment values and performance history." *Id.* ¶ 16.

On December 4, 2017, Horowitz and Greenberg spoke by telephone and discussed the possibility of a partnership. On December 19, 2017, during a meeting in Philadelphia,

Pennsylvania, Greenberg verbally offered to make Horowitz "his first investment management partner." *Id.* ¶ 18. He proposed the financial terms of the arrangement, including a 20 percent share of incentive fee profits allocated by Crossroads Partners, LP and a 10 percent share of the allocation provided by Wexford Spectrum Advisors, LLC ("Wexford"), an entity whose investments were managed by Crossroads Investments, LP and Crossroads Advisors, LLC. Greenberg also discussed various profitability benchmarks for increasing Horowitz's share of the partnership, as well as plans to have Horowitz succeed Greenberg once Greenberg retired. According to Horowitz, he accepted this verbal offer of partnership at the end of the December 19, 2017 meeting.

Following this meeting, Horowitz became more involved in the Crossroads Entities and provided them with "deeper dive analysis on whatever Greenberg requested, unlimited consultations, in-person meetings, assistance with portfolio construction, asset allocation and marketing materials," as well as "sales" and "evaluations of personnel and service providers." *Id.* ¶ 34. Throughout 2018, Horowitz participated in email communications, phone calls, and in-person meetings with Greenberg and the Crossroads Entities and was consulted on all of the Crossroads Entities' major business and investment decisions.

On December 5, 2018, Greenberg sent to Horowitz, in his role with "Insiders Edge, LLC," a letter entitled "Agreement" ("the December 5, 2018 Letter" or "the Letter"), on the letterhead of Crossroads Advisors, LLC, in which Greenberg stated:

> This confirms that Crossroads Advisors, LLC ("Advisors") has agreed to pay you 20% of the Incentive Fee received by it for 2018 from Crossroads Partners, LP and 10% of the Incentive Fee for 2018 received by Advisors from the account it manages for Wexford Spectrum. We will pay you the foregoing amounts within five business days after receipt by Advisors, which we expect to occur during the first half of 2019.

12/5/18 Letter at 1, Mot. Dismiss Ex. 1, ECF No. 43-2.  The December 5, 2018 Letter further stated that Crossroads Advisors, LLC had previously paid Horowitz $70,000 and that Horowitz would not be entitled to compensation relating to 10 other partnership accounts.  Finally, the December 5, 2018 Letter instructed Horowitz: "Please signify your acceptance to the foregoing and acknowledge that this letter represents our only agreement with respect to the subject matter hereof." *Id.*  Horowitz signed the December 5, 2018 Letter on behalf of Insiders Edge, LLC.

In January and February 2019, Horowitz continued to provide services to Greenberg and the Crossroads Entities.  On February 14, 2019, Horowitz received a payment described in an accompanying letter as his "share of 2018 profits."  Am. Compl. ¶ 51.  That same month, Greenberg told Horowitz that he may want to make changes to their business relationship and later told him that he wanted to downgrade Horowitz's compensation terms or terminate the partnership and return to being a customer of The Insiders Edge.  On March 19, 2019, Greenberg informed Horowitz that their business relationship was "discontinue[d]" and that Horowitz had been "fully paid" for all services.  *Id.* ¶ 56.

On January 18, 2022, Horowitz filed the present action in this Court.  The presently operative Amended Complaint alleges the following causes of action relating to the alleged partnership agreement between Horowitz and Greenberg.  In Count 1, Horowitz alleges breach of contract, based on the claim that Horowitz and Greenberg entered into a verbal agreement "to share profits as investment management partners" and that Greenberg then wrongfully and unilaterally terminated this agreement without compensating Horowitz.  *Id.* ¶¶ 57–64.  In Count 2, Horowitz alleges unjust enrichment based on the claim that Horowitz agreed to lower compensation in 2018 based on the understanding that he would receive more compensation in 2019 and beyond, but he never received any payment for his 2019 work for the Crossroads Entities.  In Count 3, Horowitz

alleges a claim for accounting based on the assertion that he was a partner in the Crossroads Entities but was denied the right to access their books, records, and papers. In Count 4, Horowitz alleges a breach of fiduciary duty based on the claim that he was owed such a duty as a partner in the Crossroads Entities, but Defendants withheld information to which Horowitz was entitled as a partner, did not allow Horowitz to receive his share of profits, and made decisions affecting the partnership without authorization from, consultation with, or disclosure to Horowitz.

## DISCUSSION

In their Motion, Defendants seek dismissal of Horowitz's Amended Complaint under Federal Rule of Procedure 12(b)(6). Defendants argue that Horowitz has failed to state a claim upon which relief can be granted as to all counts and specifically argue that Horowitz's claims are barred by the statute of frauds.

### I.   Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants attached an exhibit in support of the Motion to Dismiss, specifically, the December 5, 2018 Letter. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents. *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts are permitted to consider a document attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, because the Amended Complaint specifically references the December 5, 2018 Letter and claims that it contains "partnership terms for 2018," the Letter is fairly deemed to be integral to the complaint. Am. Compl. ¶ 50; *see* 12/5/18 Letter at 1. Where Horowitz does not challenge the document's authenticity, the Court may consider the December 5, 2018 Letter in deciding the Motion. *See Zak*, 780 F.3d at 606–07.

## II. Choice of Law

As an initial matter, Horowitz argues that in a case involving a LP or LLC such as the Crossroad Entities, Maryland law provides that the applicable law is that of the state under whose laws the relevant entity was formed, in this case, Delaware. Defendants argue that Maryland law applies because the alleged contract was purportedly formed in Maryland.

In general, "[i]n deciding questions of interpretation and validity of contract provisions, Maryland courts ordinarily apply the law of the jurisdiction where the contract was made." *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992). Here, Horowitz has alleged that "[f]inal formation of the agreement at issue and the vast majority of the services provided . . . which establish the causes of action . . . were completed and performed by [Horowitz] while in . . . Maryland and

6

Montgomery County." Am. Compl. ¶ 2. Horowitz has also alleged that the discussions relating to his integration into the Crossroads Entities as a partner occurred "primarily while he was in Maryland." *Id.* ¶ 32. Under these circumstances, the Court will apply Maryland law. *See Allstate Ins. Co.*, 611 A.2d at 101.

Under Maryland law, however, "[t]he laws of the state under which a foreign limited liability company is organized govern its organization, internal affairs, and the liability of its members." Md. Code Ann., Corps. & Ass'ns § 4A–1001(a)(1) (LexisNexis 2021). Similarly, "[t]he laws of the state or country under which a foreign limited partnership is organized govern its organization and internal affairs and the liability of its limited partners." *Id.* § 10–901(a)(1). Thus, on issues relating to the organization and internal affairs of the Crossroads Entities, such as what requirements need to be fulfilled in order for an individual to become a member of one of these entities, Delaware law applies.

## III. Breach of Contract

Horowitz's breach of contract claim is based on his allegation that he and Greenberg entered into an agreement that made him Greenberg's investment management partner as of the beginning of 2018. Am. Compl. ¶¶ 35, 57–85. Fairly construed, the Amended Complaint also claims that by virtue of his arrangement with Greenberg, Horowitz became a member of Crossroads Advisors, LLC, Crossroads Investments, LLC, and Crossroads Assets, LLC (collectively, the "LLC Entities") and also became a partner in Crossroads Investments, LP and Crossroads Partners, LP (collectively, the "LP Entities").

### A. The Crossroads Entities

Upon review of the Amended Complaint, the Court finds that Horowitz has not alleged sufficient facts to support a claim that he became a member of any or all of the LLC Entities or the

7

LP Entities. Under Delaware law, an individual can become a member of a Delaware LLC after its formation "upon compliance with the limited liability company agreement or, if the limited liability company agreement does not so provide, upon the consent of all members." Del. Code Ann. tit. 6, § 18–301(b)(1) (2020). Likewise, an individual can become a partner in a Delaware LP after its formation "upon compliance with the partnership agreement or, if the partnership agreement does not so provide, upon the consent of all partners." Del. Code Ann. tit. 6, § 17–301(b)(1). Here, although Horowitz has alleged that he entered into some kind of verbal partnership with Greenberg, he has not alleged sufficient facts to support the conclusion that his agreement included formal membership in any of the LLC Entities or formal partnership in any of the LP Entities. Even if a writing is not necessary to establish that a Delaware LLC or LP has added a new member or partner, at no point in the Amended Complaint has Horowitz alleged that any of his discussions with Greenberg included specific reference to actual membership or partnership in any of the particular Crossroads Entities. Notably, Greenberg was one of two partners in Crossroads Investments, LP and was not even a partner in Crossroads Partners, LP, so any consent he provided individually would not constitute "consent of all partners." *Id.* Even if he effectively controlled the entities that were partners in the LP Entities, the general conversations described by Horowitz cannot reasonably be construed as demonstrating a binding commitment by all partners in Crossroads Investments, LP and Crossroads Partners, LP to add Horowitz as a partner in those entities. Likewise, any verbal agreement by Greenberg to consent to adding Horowitz as an additional member of any of the LLC Entities would require some reference to an intent to consent to such a change in the membership of the specific entity in question. Significantly, Horowitz acknowledged in the Amended Complaint that he was never asked to and never agreed to be bound by any operating agreement for any of the Crossroads Entities. Even

viewing the allegations in the light most favorable to Horowitz, the Court finds that they do not plausibly support a claim that Horowitz became a member or partner in the Crossroads Entities. The Court will therefore dismiss the breach of contract claims against the Crossroads Entities.

### B.     Unincorporated Partnership

At most, Horowitz has alleged that he and Greenberg entered into a verbal partnership agreement, or some other contract, under which Greenberg agreed that Horowitz would receive a certain share of the profits generated by certain funds in the Crossroads Entities, at a rate that would change over time, in exchange for Horowitz's services. Under Maryland law, such a partnership is "the unincorporated association of two or more persons to carry on as co-owners a business for profit." Md. Code Ann., Corps. & Ass'ns § 9A–202. An agreement to such a partnership need not be in writing. *MAS Assocs., LLC v. Korotki*, 214 A.3d 1076, 1087 (Md. 2019). "The existence of a partnership [is] based on the intent of the parties," and "the party alleging that the parties intended to form a partnership has the burden of proving intent." *Id.* at 1086. Among the facts to be considered on whether there was such intent are management and control of the business entity, capital contributions to the business entity, and sharing of profits and losses. *Id.* at 1090, 1093, 1095.

Here, Horowitz has alleged sufficient facts to support the claim that he had either a partnership agreement or some other contract with Greenberg that was later breached by Greenberg. Whether there actually was such an agreement, the precise terms of the agreement, and whether it was breached are factual issues that are not appropriately resolved at this stage of the case.

Defendants nevertheless offer two additional arguments for dismissal. First, they argue that the statute of frauds bars the oral contract. Under the Maryland statute of frauds, "[u]nless a

contract or agreement upon which an action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or another person lawfully authorized by that party, an action may not be brought . . . [o]n any agreement that is not to be performed within 1 year from the making of the agreement." Md. Code Ann., Cts. & Jud. Proc. § 5–901 (LexisNexis 2020). This statute, however, has been interpreted to render an oral contract unenforceable only "when performance of the oral contract is *impossible* during the year period." *Adams v. Wilson*, 284 A.2d 434, 435–36, 438 (Md. 1971). In *Adams*, the Court of Appeals of Maryland interpreted this provision narrowly when it found that an oral agreement to join a partnership was not barred by the statute of frauds even though it contemplated that the joining member would make a payment from earnings in an unspecified year, because it was not impossible to satisfy those obligations within a year. *Id.* Notably, in *MAS*, the court specifically stated that under Maryland law, an unincorporated partnership agreement need not be in writing. *MAS Assocs., LLC*, 214 A.3d at 1087. The Court therefore will not find that Horowitz's claim of a breach of the oral partnership agreement is barred by the statute of frauds.

Second, Defendants argue that Horowitz's claim that there was an oral partnership agreement is squarely refuted by the December 5, 2018 Letter. Although Horowitz alleged that in the December 5, 2018 Letter, Greenberg "confirmed the verbally offered 12/19/17 partnership terms for 2018, including the incentive fee payment percentages," Am. Compl. ¶ 50, the Letter, in fact, contains no reference to any partnership agreement. Rather, the Letter, while stating that its subject was an "Agreement," describes terms upon which Crossroads Advisors, LLC would pay specific percentages of incentive fees for 2018—20 percent of the fees relating to Crossroads Partners, LP and 10 percent of the fees relating to Wexford Spectrum. 12/5/18 Letter at 1. The Letter also states that by signing, Horowitz, on behalf of Insiders Edge, LLC, "acknowledge[d]

10

that this letter represents our only agreement with respect to the subject matter hereof." *Id.* This provision provides significant support for Defendants' argument that the December 5, 2018 Letter contradicts the claim that Horowitz entered into an agreement to become a member of Crossroads Advisors, LLC, at least with respect to 2018. *See Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465–68 (4th Cir. 1991) (finding that in the event of a conflict between allegations in the complaint and the contract, the terms of the contract prevail); *Trimble Navigation*, 484 F.3d at 705. However, where the December 5, 2018 Letter is, on its face, an agreement between Crossroads Advisors, LLC and Insiders Edge, LLC, rather than between Greenberg and Horowitz, and focuses on payments for work performed in 2018, the Court does not find the Letter entirely forecloses Horowitz's claim that there was some kind of contractual agreement between the two individuals that was breached. The Court will therefore deny the Motion as to the breach-of-contract claim to the extent that it alleges an unincorporated partnership agreement or other oral contract between Greenberg and Horowitz.

## IV.   Accounting and Breach of Fiduciary Duty

Because the Court will dismiss the claim of a breach of contract based on Horowitz's claim that he entered into an agreement to become a member or partner in all of the Crossroads Entities, and Horowitz's claims in Counts 3 and 4 for accounting and breach of a fiduciary duty are premised on his status as a member or partner in each of the Crossroads Entities, those claims necessarily fail.

In Count 3, Horowitz asserts a claim for accounting, arguing that under Delaware law, as a member or partner of the Crossroads Entities, he was entitled to inspect the books, records, and papers of the Crossroads Entities. As discussed above, however, Horowitz has alleged, at most, a new partnership agreement with Greenberg, for which Maryland law applies. *See supra* part II.

Under Maryland law, there is no cause of action for accounting because although "an equitable claim for an accounting once served a necessary discovery function, that function has been superseded by modern rules of discovery." *Alts. Unlimited v. New Balt. City Bd. of Sch. Comm'rs*, 843 A.2d, 252, 307–08 (Md. Ct. Spec. App. 2004); *see also Ark. Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 648 (D. Md. 2020). The Court will therefore grant the Motion as to the accounting claim.

In Count 4, Horowitz alleges a breach of fiduciary duty based on his assertion that Greenberg "lock[ed] plaintiff out of the partnership" and withheld "accountings and information relevant to plaintiff as a partner or member." Am Compl. ¶ 82–83. To allege a claim for breach of fiduciary duty, a plaintiff must allege: (1) "the existence of a fiduciary relationship"; (2) "a breach of duty owed by the fiduciary to the beneficiary"; and (3) "harm resulting from the breach." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1046 (Md. 1995). Because Horowitz has not plausibly alleged an agreement to become a member or partner in the Crossroads Entities, he has necessarily failed to allege the existence of a fiduciary relationship with respect to the Crossroads Entities. As for Greenberg, even assuming that he entered into an oral agreement to form an unincorporated partnership, Horowitz has failed to allege facts demonstrating that Greenberg was subject to a fiduciary duty under Maryland law that would have been breached by a failure to give him access to the identified information. Therefore, the Court will grant the Motion as to the breach of fiduciary duty claim.

## V.     Unjust Enrichment

In Count 2, Horowitz alleges a claim of unjust enrichment based on his assertion that he provided services to Greenberg and to the Crossroads Entities throughout 2018 and in the first three months of 2019 but was not compensated for his work in 2019 and was undercompensated

12

for his work in 2018. To state a claim for unjust enrichment, a plaintiff must show: (1) a "benefit conferred upon the defendant by the plaintiff"; (2) an "appreciation or knowledge by the defendant of the benefit"; and (3) the "acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007). Although an unjust enrichment claim cannot succeed if there was a contract governing the subject matter of the claim, a plaintiff may plead such a claim in the alternative, "regardless of consistency" with other claims. Fed R. Civ. P. 8(d).

Here, even assuming that there was no partnership agreement that governed the subject of payments for services to Horowitz, the unjust enrichment claim cannot succeed as to the alleged undercompensation in 2018. Even if Horowitz was unfairly underpaid, it is undisputed that the December 5, 2018 Letter constituted some kind of contract that expressly related to the subject of payments for Horowitz's services during 2018, and that Horowitz actually received payments for 2018 work pursuant to the terms of the Letter. Because there was a written contract addressing payments for Horowitz's work in 2018, the unjust enrichment claim cannot succeed on the issue of 2018 payments.

Horowitz, however, has also alleged unjust enrichment based on the claim that he performed services for the Crossroads Entities in the first three months of 2019 but received no compensation for that work. The December 5, 2018 Letter does not address payments for work performed in 2019.

The first element of unjust enrichment, a benefit conferred upon the defendants, has been sufficiently pleaded because Horowitz has alleged that the services he provided to the Crossroads Entities, including in 2019, led to "increased goodwill and higher profits" and helped the

13

Crossroads Entities "avoid[] loss of value and existential threats to ownership interests in Crossroads." Am. Compl. ¶ 68. The second element, appreciation of the benefit, is sufficiently alleged, based in part on the reference to two emails sent by Greenberg in January 2019 acknowledging Horowitz's work, which supports the reasonable conclusion that Greenberg was aware of the work performed by Horowitz.

As for the third element, circumstances establishing the unfairness of the retention of the benefit without compensation, the Court finds that it is sufficiently alleged, including based on Horowitz's assertions that in the beginning of 2019, the Crossroads Entities faced an "existential threat" in the form of a "likely rapid beginning-of-the-year 2019 reversal in U.S. equity price with Crossroads poorly positioned as too defensive," and that Horowitz helped Greenberg and the Crossroads Entities avoid this threat by shifting their portfolio. *Id.* ¶¶ 48–49. The Motion will therefore be denied as to the unjust enrichment claim as it relates to 2019 payments.

Finally, Defendants also argue that the unjust enrichment claim should be dismissed for lack of subject matter jurisdiction, because there is no basis to conclude that the services Horowitz provided in 2019 meet the amount-in-controversy requirement of 28 U.S.C. § 1332. "The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith,'" meaning that "it 'must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1983)); *see Choice Hotels Int'l, Inc. v. Shiv Hosp., L.L.C.*, 491 F.3d 171, 176 (4th Cir. 2007). The determination on whether diversity jurisdiction exists is made based on the operative claims at the time of the filing of the complaint, "regardless of later changes in originally crucial facts such as

the parties' citizenship or the amount in controversy." *See Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 255–56 (4th Cir. 2002). Even where claims are dismissed such that the value of the remaining aggregated claims necessarily fall below the required amount in controversy, a federal district court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining claims. *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995). Here, where Horowitz alleged damages of $100,000 in relation to all claims asserted in the Amended Complaint, the Court finds that he continues to have a viable breach-of-contract claim, and there is no basis to conclude as a matter of legal certainty that his claims could not exceed $75,000 or that the request for damages was not made in good faith, the Court will not dismiss this claim for lack of subject matter jurisdiction. *See Horton*, 367 U.S. at 353–54.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to the breach of contract claims against the Crossroads Entities in Count 1, the accounting claim in Count 2, the breach of fiduciary duty claim in Count 3, and the unjust enrichment claim in Count 4 as it relates to payments made for work performed in 2018. The Motion will be otherwise denied. A separate Order shall issue.

Date: January 6, 2023

/s/ THEODORE D. CHUANG
THEODORE D. CHUANG
United States District Judge